Santomarco v Sheveroja (2024 NY Slip Op 51764(U))

[*1]

Santomarco v Sheveroja

2024 NY Slip Op 51764(U)

Decided on December 30, 2024

Supreme Court, Richmond County

Castorina, Jr., J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on December 30, 2024
Supreme Court, Richmond County

Maryann Santomarco, Plaintiff,

against
Damail Sheveroja, Defendant.

Index No. 152046/2023

Attorney for the Plaintiff
Glen Devora, Esq.
Jonathan D'agostino & Associates, P.C. 
3309 Richmond Avenue
Staten Island, NY 10312 
Phone: (718) 967-1600 
E-mail: gdevora@daglawteam.com
Attorney for the Defendant
Leigh Ann Panek, Esq.
Law Office of Proietto, Peek and Elliot 
2 Huntington Quad Ste 101
Melville, NY 11747-4505 
Phone: (516) 229-4418 
E-mail: BronxSC@geico.com

Ronald Castorina, Jr., J.

The following e-filed documents listed on NYSCEF (Motion No. 002) numbered 29-41 were read on this motion.
Upon the foregoing documents, and after oral argument conducted on December 5, 2024, on Motion Sequence No. 002, Motion Sequence #002 is resolved and therefore, it is hereby,
ORDERED that prong (a) of Plaintiff's Motion Sequence No. 002 seeking summary judgment on the issue of Defendant's negligence in favor of the Plaintiff and against the Defendant pursuant to CPLR § 3212 on the grounds that no material issues of fact exist regarding any negligence and/or liability on his part is DENIED, with prejudice; and it is further,
ORDERED, that prong (b) of Plaintiff's Motion Sequence No. 002 seeking to strike Defendant's Affirmative Defense alleging comparative fault on the part of the Plaintiff is DENIED with prejudice; and it is further,
ORDERED, that counsel shall appear for a conference on the next appearance date of January 15, 2025, at 9:30 AM, at the Courthouse located at 26 Central Avenue, Courtroom 330, Staten Island, NY; and it is further,
ORDERED, that the Clerk of the Court shall enter judgment accordingly.
 Memorandum Decision

 I. Procedural History
On November 7, 2023, Plaintiff commenced this negligence action to recover for personal injuries allegedly sustained by the Plaintiff because of a motor vehicle accident on September 22, 2022. Plaintiff filed Motion Sequence No. 002 by Notice of Motion on October 22, 2024, seeking (a) summary judgment pursuant to CPLR § 3212 as against Defendant on the issue of liability; (b) to strike Defendant's affirmative defense of comparative negligence and upon granting partial summary judgment as aforesaid, setting this matter down for an assessment of damages pursuant to CPLR§ 3212 [c]; and (c) for such further relief as this court deems just and proper.
On October 25, 2024, Defendant filed opposition to Motion Sequence No. 002. Plaintiff filed reply on Motion Sequence No. 002 on October 25, 2024. On December 5, 2024, oral argument was completed on Motion Sequence No. 002.

 II. Facts
On September 2, 2022, Plaintiff was operating a 2013 Hyundai on Lincoln Avenue, a one-way street (NY St Cts Filing [NYSCEF] Doc No. 31 at pages 21-22). The accident took place at the intersection of Lincon Avenue and Kiswick Street. (see id at page 22 lines 8-11). Kiswick Street is also a one-way street. (see id at page 23 lines 11-13). The only traffic control device at the intersection of Lincoln Avenue and Kiswick Street is a stop sign on Kiswick Street. (see id at pages 23-24).
Plaintiff testified in his EBT as follows:
Q. Do you know the highest rate of speed along Lincoln Avenue?
A. Do I know what the speed limit is? I think it is 25.
Q. And do you know your highest rate of speed while traveling on Lincoln Avenue?
A. About 10, 15. (see id at page 26 lines 17-23).
Q. At some point while traveling on Lincoln Avenue, did you hit the intersection with Kiswick Street?
A. Yes, I passed it, or I tried to pass it.
Q. And from the time you got in, up until you reached that intersection were you  first of all, did you have a cell phone with you?
A. I keep it in my bag, yes.
Q. And did you use your cell phone at any point while traveling on Lincoln Avenue?
A. No, I did not.
Q. Did you have a radio or anything on?
A. I don't recall.
Q. Eating or drinking anything?
A. No.
Q. Did you smoke at that time?
A. No, I don't smoke. (see id at page 27 lines 8-25).
Q. Your vehicle, I'm assuming came equipped with a seatbelt?
A. Yes.
Q. Did you have your seatbelt on?
A. Yes.
Q. Did it go across your shoulder and your waist?
A. Yes.
Q. Do you know if your vehicle came equipped with airbags?
A. Yes, it does.
Q. Front airbags or side airbags?
A. Front.
Q. Within say three car lengths of reaching the intersection with Kiswick Street, what was your speed?
A. About 10, 15  when I was reaching it?
Q.When you were about three car lengths from actually crossing the intersection?
A. I cannot give you an accurate number, but probably much less. It is a residential area, so I was just about 10, 15. (see id at page 28 lines 2-24).
Q. As you were approaching that intersection, do you know how much of your vehicle had entered the intersection before the accident occurred? (see id at page 29 lines 22-25).
A. It was in the intersection.
Q. Okay. Were you in the middle of the intersection, at the beginning, the end, something else?
A. In the middle. (see id at page 30 lines 2-7).
Q. Prior to the contact occurring, did you ever see what it was that you had the accident with?
A. No, I did not.
Q. You never saw a car, nothing, before the contact; right?
A. No. (see id at lines 12-18).
Q. Prior to feeling the contact and hearing the crash and your vehicle moving, did you hear any honking horns, revving engines, anything?
A. No, nothing. (see id at page 31 lines 20-23).
Defendant testified in his EBT that on the day of the accident, he was driving a black 2019 Dodge pickup truck. (NY St Cts Filing [NYSCEF] Doc No. 32 at pages 12-13). Defendant contends that he was traveling on Kiswick Street and intended to continue traveling on Kiswick Street past Lincoln Avenue prior to the accident happening. (see id at page 21 lines 10-15). Defendant maintains that he "stopped completely at a stop sign on Kiswick. I saw; I checked on my right." (see id at lines 18-19).
Defendant further testified:
Q. [D]id you bring your vehicle to a stop at the intersection of Lincoln and Kiswick?
A. Yes, full stop.
Q. And was your vehicle at the stop line, was it a little past it, behind it? Where was your vehicle in relation to the stop line on the roadway when you came to a stop?
A. It was not past the lines.
Q. And when you brought your vehicle to a stop, were you at a complete stop, or were you rolling, or were you moving slightly forward? How would you describe it?
A. Complete stop.
Q. And after you brought your vehicle to a "complete stop," what did you do?
A. I checked when I would start. I checked on my right because that is the direction the cars were coming from, as it is one-way. I checked on the right; it was clear, and I slowly started crossing the street.
Q. And when you looked to your right, down Lincoln Avenue, was there anything blocking your view or were you able to see down Lincoln Avenue?
A. It was clear.
Q. And was Lincoln Avenue a straight road to the right?
A. Yes.
Q. And was it leveled?
A. It was a good street. I'm not an expert, and I didn't check if it was unleveled on Lincoln. So, I just went straight; it was good.
Q. I just want to know: When you looked to the right, did Lincoln go downhill, did it go uphill, or was it basically leveled?
A. It was straight.
Q. How far down Lincoln were you able to see when you looked to your right while you were stopped on Kiswick?
A. You can see actually around 300, 400 feet  200, 300 feet, I'm sorry.
Q. Would you see a block to the right?
A. To be honest, I didn't  I didn't notice. I noticed that the road was clear, and I started driving slowly.
Q. Okay. You said you could see about 200 to 300 feet. Is there any reason why you couldn't see further beyond 200 or 300 feet?
A. I think that's the end of the block; that's the distance of the end of the block. I am not sure if there were incoming vehicles from the other block, from another street, but what I saw was completely clear. (see id at page 24-26).
Q. My question, sir, is very simple. At the moment of the impact, was your right foot on the gas? Was it covering the brake? What was your right foot doing?
A. It was on the gas because I was moving. (see id at page 29 lines 16-20).
Q. When the impact took place, how far through the intersection was your vehicle?
A. My car had completely crossed the intersection past the crosswalk.
Q. So, is it your testimony that when the impact occurred, your vehicle was completely through the intersection?
A. I had crossed Lincoln completely before the accident happened.
Q. And what portion of your vehicle was impacted in this accident?
A. The car hit the passenger's side, and the tire on the passenger's side was completely off the car. And the car was at that moment stuck; it couldn't move. At that moment, it was very quick. (see id at Page 30 lines 6-20).
The photographs submitted of the Plaintiff's vehicle after the accident show extensive damage to the front end of the Plaintiff's vehicle. (NY St Cts Filing [NYSCEF] Doc No. 38). The photograph of the Defendant's vehicle after the accident shows extensive damage to the [*2]passenger's side midsection of the Defendant's vehicle from the front wheel to the rear passenger door. (NY St Cts Filing [NYSCEF] Doc No. 37).

III. Plaintiff Motion for Summary Judgment on Negligence
"Summary judgment is designed to expedite all civil cases by eliminating from the Trial Calendar claims which can properly be resolved as a matter of law. Since it deprives the litigant of his day in court it is considered a drastic remedy which should only be employed when there is no doubt as to the absence of triable issues" (see Andre v. Pomeroy, 35 NY2d 361 [1974] citing Millerton Agway Cooperative, Inc. v. Briarcliff Farms, Inc., 17 NY2d 57 [1966]).
"A motion for summary judgment shall be supported by affidavit, by a copy of the pleadings and by other available proof, such as depositions and written admissions" (see Poon v Nisanov, 162 AD3d 804 [2d Dept 2018] quoting CPLR § 3212 [b]). "The moving party's submissions must show 'that there is no defense to the cause of action or that the cause of action or defense has no merit'" (see id). "To defeat summary judgment, the nonmoving party need only rebut the prima facie showing made by the moving party so as to demonstrate the existence of a triable issue of fact" (see id citing Alvarez v. Prospect Hosp., 68 NY2d 320 [1986]; Stukas v. Streiter, 83 AD3d 18 [2d Dept 2011]).
"On a motion for summary judgment, facts must be viewed 'in the light most favorable to the non-moving party'" (see Shabat v State of New York, 177 AD3d 1009 [2d Dept, 2019] quoting Vega v Restani Constr. Corp., 18 NY3d 499 [2012]; Ortiz v. Varsity Holdings, LLC, 18 NY3d 335 [2011]).
"Negligence cases by their very nature do not usually lend themselves to summary judgment, since often, even if all parties are in agreement as to the underlying facts, the very question of negligence is itself a question for jury determination" (see Davis v Commack Hotel, LLC, 174 AD3d 501 [2d Dept 2019] quoting Ugarriza v Schmieder, 46 NY2d 471 [1979]; citing Andre v Pomeroy, 35 NY2d 361 [1974]; Evans v Jones, 286 AD 921 [4th Dept 1955]).
Defendant maintains that he brought his vehicle to a full and complete stop and it was not past the stop line on the road (NY St Cts Filing [NYSCEF] Doc No. 32 at pages 24-25). Defendant further testified "I checked on my right because that is the direction the cars were coming from, as it is one-way. I checked on the right; it was clear, and I slowly started crossing the street." (see id at Page 25 lines 7-10). Defendant contends that he waited at the stop sign for about "30 seconds, maybe 20 seconds, until I made sure it was all clear." (see id at page 26 lines 24-25).
Defendant was questioned as to how far he could see while stopped at the stop sign on Kiswick.
A. You can see actually around 300, 400 feet  200, 300 feet, I'm sorry.
Q. Would you see a block to the right?
A. To be honest, I didn't  I didn't notice. I noticed that the road was clear, and I started driving slowly.
Q. Okay. You said you could see about 200 to 300 feet. Is there any reason why you couldn't see further beyond 200 or 300 feet?
A. I think that's the end of the block; that's the distance of the end of the block. I am not sure if there were incoming vehicles from the other block, from another street, but what I saw was completely clear.
Q. Okay. When you were stopped before the stop line and turned to the right, did you have any difficulty seeing down Lincoln Avenue to your right?
A. No. (see id at page 26 lines 5-21).
Defendant maintains that he checked on his right and before proceeding, checked again. (see id at page 27 lines 8-10).
Plaintiff contends that she cannot give and accurate number as far as her speed, but her highest rate of speed leading up to the intersection was approximately 10-15 miles per hour. (NY St Cts Filing [NYSCEF] Doc No. 31 at page 28 lines 22-24). Plaintiff further contends that she never saw the vehicle she had the accident with prior to contact. (see id at page 30 lines 12-15).
The photographs submitted of the Plaintiff's vehicle after the accident show extensive damage to the front end of the Plaintiff's vehicle. (NY St Cts Filing [NYSCEF] Doc No. 38). The photograph of the Defendant's vehicle after the accident shows extensive damage to the passenger's side midsection of the Defendant's vehicle from the front wheel to the rear passenger door. (NY St Cts Filing [NYSCEF] Doc No. 37).
The photographic evidence submitted raises further questions of fact when viewed in the context of the parties EBT testimony. Specifically, in relation to Defendants claim that he had cleared the intersection before the impact and Plaintiff's claim that she never saw the Defendant's vehicle before impact.
"On a motion for summary judgment, the moving party has the initial burden of coming forward with sufficient proof in admissible form to enable the court to determine that it is entitled to judgment as a matter of law" (see Rosa v. Gordils, 211 AD3d 1060 [2d Dept 2022] quoting Gesuale v Campanelli & Assoc., P.C., 126 AD3d 936 [2d Dept 2015]). "Defendants moving for summary judgment in a negligence action arising out of an automobile accident have the burden of establishing, prima facie, that they were not at fault in the happening of the accident" (see id quoting Elusma v Jackson, 186 AD3d 1326 [2d Dept 2020]; Nesbitt v Gallant, 149 AD3d 763 [2d Dept 2017]).
"There [may] be more than one proximate cause of an accident, and, [g]enerally, it is for the trier of fact to determine the issue of proximate cause" (see id quoting Choo v. Virginia Transp. Corp., 204 AD3d 743 [2d Dept 2022]; citing Shuofang Yang v. Sanacore, 202 AD3d 1120 [2d Dept 2022]). "[T]he issue of proximate cause may be decided as a matter of law where only one conclusion may be drawn from the established facts" (see id quoting Rodriguez v. Palacio, 199 AD3d 728 2d Dept 2021]).
Although Defendant's direction of travel was controlled by a stop sign, there are triable issues of fact, inter alia, as to whether the Plaintiff was free of negligence. (see Campbell-Lopez v Cruz, 31 AD3d 475 [2d Dept 2006] citing Romano v. 202 Corp., 305 AD2d 576 [2d Dept 2003]; Hernandez v Bestway Beer & Soda Distrib., 753 NYS.2d 467 [1st Dept 2003]).
Plaintiff has failed to demonstrate his prima facie entitlement to judgment as a matter of law. Plaintiff has failed to establish that she was free from fault in the cause of the accident. The evidence submitted is insufficient to establish prima facie Plaintiff's entitlement to judgment as a matter of law as it failed to eliminate triable issues of fact regarding whether Plaintiff was free from fault in the occurrence of the accident.
Accordingly, the prong of Plaintiff's Motion Sequence No. 002 seeking summary judgment on the issue of Defendant's negligence in favor of the Plaintiff and against the Defendant pursuant to CPLR § 3212 on the grounds that no material issues of fact exist regarding any negligence and/or liability on his part is DENIED, with prejudice.

IV. Strike Affirmative Defense of Comparative Negligence
Plaintiff seeks to strike Defendant's Affirmative Defense alleging comparative fault on the part of the Plaintiff.
"The rule now is that an answer containing defenses or denials may be stricken out as sham or frivolous when the motion papers on a motion for summary judgment make it appear that the answer falls within either category." (see Cleghorn v Ocean Accident & Guar. Corp., 216 AD 342 [2d Dept 1926] citing Commonwealth Fuel Co. v Powpit Co., 212 AD 553 [2d Dept 1925]).
"The issue of a plaintiff's comparative negligence, however, may be decided in the context of a summary judgment motion where the plaintiff moves for summary judgment dismissing a defendant's affirmative defense alleging comparative negligence" (see Abramov v Martinez, 224 AD3d 794 [2d Dept 2024] citing Seizeme v Levy, 208 AD3d 809 [2d Dept 2022]; Sapienza v Harrison, 191 AD3d 1028 [2d Dept 2021]).
Plaintiff is unable to give an accurate number as far as her speed, but testified her highest rate of speed leading up to the intersection was approximately 10-15 miles per hour. (NY St Cts Filing [NYSCEF] Doc No. 31 at page 28 lines 22-24). Plaintiff further contends that she never saw the vehicle she had the accident with prior to contact. (see id at page 30 lines 12-15).
Defendant maintains that he brought his vehicle to a full and complete stop at the stop sign and his vehicle was not past the stop line on the road (NY St Cts Filing [NYSCEF] Doc No. 32 at pages 24-25). Defendant further testified "I checked on my right because that is the direction the cars were coming from, as it is one-way. I checked on the right; it was clear, and I slowly started crossing the street." (see id at Page 25 lines 7-10). Defendant contends that he waited at the stop sign for about "30 seconds, maybe 20 seconds, until I made sure it was all clear." (see id at page 26 lines 24-25).
The photographic evidence submitted raises further questions of fact when viewed in the context of the parties EBT testimony. Specifically, in relation to Defendants claim that he had cleared the intersection before the impact and Plaintiff's claim that she never saw the Defendant's vehicle before impact.
"The conflicting statements by the Plaintiff and Defendant in their EBTs and the photographic evidence of the vehicles post-accident fail to resolve all issues of fact regarding which vehicle caused the accident raising triable issues of fact regarding comparative fault on the part of the Plaintiff. (see Rahman v Montesdeoca, 186 AD3d 631 [2d Dept 2020]).
Accordingly, Plaintiff's Motion Sequence No. 002 seeking to strike Defendant's Affirmative Defense alleging comparative fault on the part of the Plaintiff is DENIED with prejudice.

V. Decretal Paragraphs
It is hereby ORDERED that prong (a) of Plaintiff's Motion Sequence No. 002 seeking summary judgment on the issue of Defendant's negligence in favor of the Plaintiff and against the Defendant pursuant to CPLR § 3212 on the grounds that no material issues of fact exist regarding any negligence and/or liability on his part is DENIED, with prejudice; and it is further,
ORDERED, that prong (b) of Plaintiff's Motion Sequence No. 002 seeking to strike Defendant's Affirmative Defense alleging comparative fault on the part of the Plaintiff is DENIED with prejudice; and it is further,
ORDERED, that counsel shall appear for a conference on the next appearance date of January 15, 2025, at 9:30 AM, at the Courthouse located at 26 Central Avenue, Courtroom 330, Staten Island, NY; and it is further,
ORDERED, that the Clerk of the Court shall enter judgment accordingly.
The foregoing shall constitute the Decision and Order of this Court. 
Dated: December 30, 2024
Staten Island, New York
E N T E R,
HON. RONALD CASTORINA, JR.
JUSTICE OF THE SUPREME COURT